A. ZUCARRO v. THE STATE.

No. 4344.    Decided February 28, 1917.

Final Opinion October 22, 1917.

**1.—Sunday Law—Information—Statute Construed—Motion Pictures.**

Where, upon trial of a violation of article 302, Penal Code, for permitting a performance on Sunday by displaying motion pictures for public amusement, and for admission to which a fee was charged, the information followed approved precedent and the evidence supported the allegations therein, there was no reversible error. Following Ex parte Lingenfelter, ·64 Texas Crim. Rep., 30. Davidson, Presiding Judge, dissenting.

**2.—Same—Statute Construed—Moving Picture Shows.**

Article 302, Penal Code, which provides that the place of public amusement shall be construed to mean circuses, theaters, variety theaters, and such other amusements as are exhibited and for which an admission fee is charged, includes moving picture shows exhibited and for which an admission fee is charged. Davidson, Presiding Judge, dissenting.

**3.—Same—Rule of Construction—Statute Construed—Ejusdem Generis—Words and Phrases.**

In the construction of statutes of this kind, the general words such as "such other amusements" will not be rejected as too general, nor interpreted to include all kinds of amusements, and the rule of ejusdem generis that the particular words are presumed to describe certain species and the general words to be used for the purpose of including other species of the same genus, applies. Following Ex parte Muckenfuss, 52 Texas Crim. Rep., 467. Distinguishing Ex parte Roquemore, 60 Texas Crim. Rep., 282. Davidson, Presiding Judge, dissenting.

**4.—Same—Statute Construed—Rule Stated.**

The rule, which requires criminal statutes to be construed strictly applies to those only of a highly penal character, not to mere misdemeanors, and statutes should not, in any cases, be so strictly construed as to defeat the obvious intention of the Legislature. Following Randolph v. State, 9 Texas, 521, and other cases.

**5.—Same—Statute Construed—Subsequent Legislation.**

This court must conclude that the fact that a moving picture show was invented subsequent to the passage of the statute would not preclude the statute prohibiting it, provided it comes within the classification found in the statute, which, in the opinion of the court, it does. Davidson, Presiding Judge, dissenting.

**6.—Same—Statute Construed—Repeal.**

Article 1480 of the Penal Code, which deals with buildings constructed, fitted and equipped for certain purposes named therein as to public houses of

Vol. 82 Crim.-1

amusement, subject to regulations, etc., is not in conflict with article 302 of the Penal Code·providing for the violation of the Sunday law, and does not repeal it, which deals with the business conducted and not the structure in which the business is situated. If, however, article 1480, supra, is construed to apply to the exhibitions as well as the houses in which they occur, its effect is to declare a moving picture show a public house of amusement, subject to regulation by statute.

### 7.—Same—City Ordinance—State Law.

The contention that an ordinance of the city of Fort Worth, Texas, made it lawful for the defendant to conduct his business within the hours permitted on Sunday, etc., is untenable, as it conflicts with the State law, article 302, Penal Code, which it can not suspend or restrict. Following Fay v. State, 44 Texas Crim. Rep., 381, and other cases.

Appeal from the County Court of Tarrant. Tried below before the Hon. Jesse M. Brown.

Appeal from a conviction of a violation of the Sunday law; penalty, a fine of twenty dollars.

The opinion states the case.

*Baskin, Dodge, Baskin & Eastus,* for appellant.—On question that it is not an offense in this State to open a moving picture show on Sunday and give an exhibition of moving pictures and charge a fee for admission therefor: Ex parte Muckenfuss, 52 Texas Crim. Rep., 467; Ex parte Roquemore, 60 id., 282; Jacobson v. State, 55 id., 242; Crow v. State, 6 Texas, 335; Walker v. State, 7 id., 260; Murray v. State, 21 Texas Crim. App., 620.

On general rules of construction: Murray et al. v. State, 25 Texas Crim. App., 631; Sparks v. State,.174 S. W. Rep., 351; Roquemore v. State, 60 Texas Crim. Rep., 282.

On question of ejusdem generis: San Antonio Independent School District v. State, 173 S. W. Rep., 525; Waple et al. v. Gilmore, 189 S. W. Rep., 122; Duke v. State, 104 Texas, 370, and cases cited in opinion, and cases supra.

*E. B. Hendricks,* Assistant Attorney General, *Marshall Spoonts,* County Attorney, *Will Parker* and *S. J. Calloway,* Assistant County Attorneys, and *Turner, Cummings & Doyle,* for the State.—On question of construction of article 302: Case cited in opinion.

MORROW, JUDGE.—Appellant was prosecuted by information and convicted of violating article 302 of the Penal Code, which is as follows: "Any merchant, grocer, or dealer in wares or merchandise, or trader in any business whatsoever, or the proprietor of any place of public amusement, or the agent or employe of any such person, who shall sell, barter, or permit his place of business or place of public amusement to be open for the purpose of traffic or public amusement on Sunday, shall be fined not less than twenty nor more than fifty dollars. The term, place of public amusement, shall be construed to mean circuses, theaters, variety theaters and such other amusements as are exhibited

and for which an admission fee is charged; and shall also include dances at disorderly houses, low dives and places of like character, with or without fees for admission."

The information contains the following: "That A. Zucarro, . . . the proprietor of what is commonly known as a picture show, . . . did . . . unlawfully and wilfully open and permit said place of public amusement to be open for public amusement, and did then and there on said Sunday permit a performance to be given and exhibited in said place of public amusement, towit: a display of motion pictures, for public amusement, and for admission to which a fee was then and there charged."

The case was tried before a jury, and the proof shows that on Sunday, the 9th of July, 1916, the appellant was proprietor of the Queen Moving Picture Show in Fort Worth, Tarrant County; that the picture show was open and that he was giving an exhibition of moving pictures, charging a fee therefor; that the pictures were projected on a screen by means of a moving picture machine and electricity throwing a magnifying light through the film which reflects on the screen something like a magic lantern—purely a mechanical device. There was no orchestra, no stage, no curtain or scenery. It was purely a first class moving picture show.

The question is raised by exception to the information and by motion for a new trial that the facts charged and proved do not constitute an offense under the article mentioned. Substantially the same question was before this court on an application for a writ of habeas corpus in the case of Ex parte Lingenfelter, 64 Texas Crim. Rep., 30.

The leading questions involved are: (1) What is the legal effect and meaning of the following words in the statute, viz., *"The term, place of public amusement, shall be construed to mean circuses, theaters, variety theaters and such other amusements as are exhibited and for which an admission fee is charged"*; and (2) whether or not the moving picture shows, exhibited and for which an admission fee is charged are included in the language quoted.

That in the construction of statutes of this kind, the general words such as "such other amusements" will not be rejected as too general, nor interpreted to include all kinds of amusements, is well settled by authority.

From the 36th volume of Cyc., page 1119, we quote the following: "By the rule of construction known as 'ejusdem generis,' where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." "The particular words are presumed to describe certain species and the general words to be used for the purpose of including other species of the same genus." "The words *'others'* or 'any other' following an enumeration of particular classes are therefore to be read as *'other such like'* and to include only others of like kind or character." Many decisions are cited under the text supporting the rule. 36 Cyc., p. 1120.

This rule appears to be accepted by all courts, and has been specifically adhered to by this court, notably in the case of Ex parte Muckenfuss, 52 Texas Crim. Rep., 467, wherein Judge Ramsey, writing the opinion, uses the following language:

"It is a familiar rule that, where general words follow particular and specific words, the former must be confined to things of the same kind. It has been held also, that this rule is especially applicable in the interpretation of statutes defining crimes and regulating their punishment. (Citing cases.)

"The doctrine itself is thus well expressed in Lewis' Sutherland Statutory Construction: 'It is a principle of statutory construction everywhere recognized and acted upon, not only with respect to penal statutes but to those affecting only civil rights and duties, that where words particularly designating specific acts or things are followed by and associated with words of general import, comprehensively designating acts or things, the latter are generally to be regarded as comprehending only matters of the same kind or class as those particularly stated. They are to be deemed to have been used, not in the broad sense which they might bear, if standing alone, but as related to the words of more definite and particular meaning with which they are associated.' The rule is supported by numerous cases." These are cited in the opinion.

This court, in the case of Ex parte Roquemore, 60 Texas Crim. Rep., 282, discussed the particular statute which is involved in this prosecution, and held that it did not make it unlawful for the proprietor of a baseball park to permit a game to be played therein on Sunday or to cause a game to be played on Sunday therein and to charge an admission fee therefor, the distinction made by the court in that case being that baseball, an outdoor game, was not like or similar to the amusements named in the statute. The court said: "*What are we to understand by the general term 'and such other amusements as are exhibited and for which an admission fee is charged'? Clearly, we think amusements of a like or similar character.* This seems to have been the construction given to a similar statute by many courts." By this decision the terms, "such other amusements as are exhibited and for which an admission fee is charged," are interpreted to mean such other public amusements of a like or similar character, as circuses, theaters and variety theaters, as are exhibited and for which an admission fee is charged; and the majority opinion of this court in the case of Ex parte Lingenfelter held that a moving picture show might be of a like or similar character of amusement as a theater and that whether or not it was such character of amusement depended upon the facts of the particular case.

Further illustrating the views of the courts of this State with reference to the construction of general words in a statute, we call attention to the case of Thompson v. State, 17 Texas Crim. App., 253, where a statute was upheld which prohibited the sale of the Illustrated Police Gazette and other illustrated publications of like character.

In the case of Randolph v. State, 9 Texas, 521, the point is explained in the syllabus, as follows: "The rule which requires criminal statutes to be construed strictly applies to those only of a highly penal character, not to mere misdemeanors.

"Statutes should not in any cases be so strictly construed as to defeat the obvious intention of the Legislature. The words of the statute against gaming, 'or any other banking,' games, etc., must have their intended effect; and consequently an indictment will lie for betting at any banking game, naming it, although it be not enumerated in the statute."

Appellant insists that inasmuch as the Act was passed before moving pictures came into vogue, they could not be held to have been within the legislative intent.

In a similar question before this court in the case of Christopher v. State, 41 Texas Crim. Rep., 235, he was charged with "keeping and exhibiting a bank or gaming device for the purpose of gaming." The statute under which he was prosecuted (art. 382 of the Penal Code) enumerated a number of gaming devices but did not enumerate a "slot machine," and the proof showed that the device he kept was a slot machine, one of the assignments being as follows: "The evidence fails to show that the 'device' in question was such as either expressly or by implication is embraced within the inhibition of the law. It was not capable of being either 'kept,' 'played' or 'exhibited' for the purpose of gaming, being an automatic machine requiring neither keeper, dealer nor exhibitor and was not in contemplation of the Legislature, because it had not been invented or conceived when the law was enacted." Article 383 at that time contained a provision as follows: "It being intended by the foregoing article to include every species of gaming device known by the name of table or bank of every kind whatever, this provision shall be construed to include any and all games which in common language are said to be played, dealt, kept or exhibited, but the enumeration of these games specially shall not exclude any other properly within the meaning of the two preceding articles." The court says: "Our statutes on this subject were evidently framed not only to cover every gaming device then known, but all others that might be invented or become known." The conviction was sustained. This case was approved in the cases of Dalton v. State, 74 S. W. Rep., 25, and Myer v. State, 81 Am. St. Rep., 17, and in the notes of 20 L. R. A. (N. S.), 240.

Other cases which are persuasive on the point are: Trenton v. Toman, 70 Atl. Rep., 606, where an automobile was classed as a carriage in construing a statute passed before the invention of automobiles, and to the same effect are State v. Thurston, 66 Atl. Rep., 580, and Baker v. Fall River, 72 N. E. Rep., 336, and Parker v. Sweet, 127 S. W. Rep., 881.

We must conclude that the fact that a moving picture show was invented subsequent to the passage of the statute would not preclude the

statute prohibiting it, provided it comes within the classification defined in the statute.

Whether it does come within this classification is a question upon which decisions of courts of other States are more or less conflicting, and the language of the statutes which they construe is different from the language of the statute under consideration.

We are referred to the case of Block v. City of Chicago, 87 N. E. Rep., 1011, in which a statute prohibiting the exhibition of obscene and immoral pictures was held not to include theaters, and to the case of Clinton· v. Wilson, 101 N. E. Rep., 192, wherein a statute which provided that "whosoever shall on Sunday keep open any billiard room, ball or pin alley, baseball grounds or other places of amusement within said city, or shall suffer or permit persons to assemble therein for the purpose of play or amusement, shall for each offense be subject to a fine," etc., was held not to prohibit a moving picture show. This decision, we think, comes well within the rule laid down by this court in the Roquemore case, supra, and that under the rule there applied the enumeration of the places of amusement which were prohibited were of a different species from theaters, circuses and variety theaters.

The Jacko case, 22 Ala., 73, was upon a statute which prohibited exhibiting feats of sleight of hand, and upon the same principle it was correctly held that a theater was not included.

The case of Com. v. Donnelly, 21 Pa. Dist. Rep., 21, was one in which the question was whether a moving picture show came within the terms of a statute levying an annual tax upon buildings fitted up and used for theatrical or operatic entertainments or for the exhibition of amusements. The holding of the court that moving picture shows did not come within this statute is distinguishable from the case under consideration in that the statute which we are construing contains general words, which are absent in the Pennsylvania statute, these general words being, "such other amusements as are exhibited and for which an admission fee is charged," and which are construed in the Roquemore case, supra, to mean, "such other amusements like or similar to circuses, theaters and variety theaters."

The case of King v. Charron, 15 Can. Crim. Cases, 241, cited by appellant, is one where a moving picture show was held not to come within a statute which prohibited the carrying on for gain any business or calling. That case appears to be in direct conflict with the decision of Graham v. State, 183 S. W. Rep., 983, in which the Supreme Court of Tennessee held that a moving picture show was prohibited under a statute which provided, "if any merchant, artisan, artificer, tradesman, farmer, or other person, shall be guilty of doing or exercising any of the common avocations of life," he shall be punished, etc.

Another case cited is London Theatre v. Evans, 31 Times Law Rep., 75, in which it was held that the exhibition of moving pictures or the performance of artists was not violative of an agreement wherein one

had obligated himself "not to give or permit to be given any colorable imitation, representation or version of his performance."

Aside from the cases discussed in Lingenfelter v. State, 64 Texas Crim. Rep., 30, we find the case of State v. Morris, from Delaware, reported in 76 Atl. Rep., 479. The case was tried on an agreed statement. It charged a violation of a statute providing, "that no person, or persons, firm, company or corporation, without having first obtained a proper license therefor, as hereinafter provided, shall within the limits of this State be engaged in, prosecute, follow, or carry on any trade;  .  .  .  that is to say:  .  .  .  exhibiting circuses  .  .  ." The agreement shows that appellant was "in the business of exhibiting moving pictures upon a screen, curtain, or other contrivance by means of a certain apparatus made for that purpose; that such business was conducted in a building known as No. 411 Market Street, Wilmington, Del.; that said moving pictures consisted of pictorial representations of scenes, persons and things in motion for the amusement and pleasure of the spectators assembled in said building, for which a price of admission was charged." The court held that the statute was violated, using the following language:

"The sole question for determination is whether the said described business of the said Hyrup Amusement Company did constitute the exhibiting of a circus within the meaning of said act of assembly. Section 5 of said statute provides that 'every building, tent, space or area where feats of horsemanship, or acrobatic sports, or theatrical performances are exhibited, shall be deemed a circus within the meaning of this act.  .  .  .' Was or was not the said Hyrup Amusement Company engaged in the business of a circus?

"Ordinarily, in the absence of any statutory declaration or definition, we should not say that said described business did constitute a circus within the usual meaning and definition of the word 'circus,' or that the meaning of circus would be included in the term 'theatrical performances'; but the said statute expressly declared that 'every building .  .  . where  .  .  . theatrical performances are exhibited shall be deemed a circus.  .  .  .' The question is, therefore, did the business of the said Hyrup Amusement Company, as disclosed by the said agreed statement of facts, come within the meaning of the terms 'theatrical performances,' which latter the statute constitutes a circus within the meaning thereof.

"By the Century Dictionary, 'theatrical' means 'of or pertaining to a theater or scenic representations resembling the manner of dramatic performers'; by Webster, 'of or pertaining to a theater or scenic or dramatic representations'; and by the Standard Dictionary, 'of or pertaining to the theater; of the nature of dramatic or scenic representations; befitting the stage; dramatic.'"

The case of Muckenfuss, 52 Texas Crim. Rep., 467, does not decide the point involved here. The facts of that case were that under a statute as follows: "Whenever a magistrate is informed upon oath

that an offense is about to be committed against the person or property of the informant, or of another, or that any person had threatened to commit an offense, it is his duty immediately to issue a warrant for the arrest of the accused, that he may be brought before such magistrate, or before some other named in the warrant," relator was arrested on an order issued by a magistrate, upon the filing of an affidavit "that relator was about to commit, and seriously threatened to commit, an offense against the laws of the State of Texas, in that he had seriously threatened to open and permit to be opened his place of business, a public amusement, on Sunday, and to give therein a theatrical performance for public amusement, to which a fee for admission is charged." The court held that the term "offense" in the statute authorizing the arrest was restricted to offenses against the "person" or "property" and that the exhibition of a prohibited amusement on Sunday was not an offense against the person or property.

We take from the Century Dictionary definitions of "circus," "variety show," "theatrical" and "drama," as follows: *Circus:* "A place of amusement where feats of horsemanship and acrobatic displays form the principal entertainment; the company of performers in such a place, with their equipage; the entertainment given." *Variety show:* "An entertainment consisting of dances, songs, negro minstrelsy, gymnastics or specialties of any kind." *Theatrical:* "Of or pertaining to a theater or scenic representations; resembling the manner of dramatic performers; all that pertains to dramatic performances; also, a dramatic performance." *Drama:* "A story put into action, or a story of human life told by actual representation of persons by persons, with imitation of language, voice, gesture, dress and accessories or surrounding conditions, the whole produced with reference to truth or probability, and with or without the aid of music, dancing, paintings and decorations; a play." *Variety theater* is defined as a place where a variety show is exhibited.

A similar question was before the Supreme Court of the United States in the case of Kalem Co. v. Harper Bros., wherein it was held that a copyright had been violated by exhibiting moving pictures of Ben Hur. From this case we quote the following from 56 Law Ed., U. S. Rep., p. 95:

"The subdivision of the question that has the most general importance is whether the public exhibition of these moving pictures infringed any rights under the copyright law. Authors have the exclusive right to dramatize any of their works. So, if the exhibition was or was founded on a dramatizing of Ben Hur, this copyright was infringed. *We are of opinion that Ben Hur was dramatized by what was done.* Whether we consider the purpose of this clause of the statute, or the etymological history and present usages of language, drama may be achieved by action as well as by speech. *Action can tell a story, display all the most vivid relations between men, and depict every kind of human emotion, without the aid of a word. It would be impossible to*

*deny the title of drama to pantomime as played by masters of the art.*
Daly v. Palmer, 6 Blatchf., 256, 264, Fed. Cas. No. 3552. But if a
pantomime of Ben Hur, it would be none the less so that it was ex-
hibited to the audience by reflection from a glass, and not by direct
vision of the figures,—as sometimes has been done in order to produce
ghostly or inexplicable effects. The essence of the matter in the case
last supposed is not the mechanism employed, but that we see the event
or story lived. The moving pictures are only less vivid than reflections
from a mirror. With the former as with the latter our visual impress—
what we see—is caused by the real pantomime of real men through the
medium of natural forces, although the machinery is different and more
complex."

The opinion last referred to we regard as pertinent to the questions
involved in this case. The reasoning of Justice Holmes seems to us
to be quite the last word on the subject. It is true the case involved
a question of the infringement of a copyright, but it will be noted that
the solution of that question depended upon whether or not a moving
picture representation of the well known romance, Ben Hur, was the
dramatization of the romance; in other words, whether the exhibition
of moving pictures of Ben Hur was the exhibition of a drama—was of
the nature of a dramatic or theatrical performance. This question was
answered in the affirmative in an argument by Justice Holmes, most
cogent and to our minds quite convincing, demonstrating that the drama
may be produced without the use of words and that direct vision of
the actors in the play is not essential. Through moving pictures, the
drama as interpreted by actors, is exhibited: the acts of men and women,
their emotions, every phase of human life, every variety of scene, all
that the drama is except the words; and, as stated by Justice Holmes,
the "drama may be achieved by action as well as by speech." The drama
is a story put in action, and a theatrical performance is a dramatic
performance. The essential elements of a circus and variety theater
are the performances or acts of those taking part.

In the light of the authorities and definitions to which reference has
been made, we are unable to accept the view that a moving picture show
is not of the same species or genus—similar in character to the circus,
the theater and the variety show. To the contrary, our opinion is
that the words of the statute, "such other amusements as are exhibited
and for which an admission fee is charged," include moving picture
exhibitions where they reproduce and exhibit dramatic or theatrical
performances or acrobatic or other feats or displays such as pertain
to the circus, or dancing, gymnastics or other entertainments of the
character exhibited in variety theaters, or other exhibitions, like or sim-
ilar to any of these, where an admission fee is charged. They are places
of public amusement within the terms of article 302, P. C., and appel-
lant's moving picture show being of this kind, its exhibition on Sunday
was prohibited.

The contention is made, however, that since the adoption of article

1480 of the Penal Code, article 302, under which this prosecution is had, is no longer in force. Article 1480 is as follows: "All buildings constructed, fitted and equipped for the purpose of theaters, commonly called theaters, opera houses, play houses, or by whatever name designated, which are and shall hereafter be used for public performances, the production and exhibition of plays, dramas, operas and other shows of whatever nature, to which admission fees are charged, be, and the same are hereby declared to be 'public houses of amusement,' and the same shall be subject to regulation by the public will as expressed by ordinance, statute, or other law; provided, that owners and lessees shall have the right to assign seats to patrons thereof, and to refuse admission to objectionable characters." The caption of that Act, which is at page 21 of the laws of 1907, is as follows: "An Act declaring theaters, play houses, opera houses and other show buildings by whatever name known, to be public places of amusement; to prevent the owners, lessees, managers and agents thereof from discriminating against persons, stock companies, corporations or others applying to lease or rent such public places of amusement, for productions and renditions of dramas, operas and other shows by whatever name known; to provide for the keeping and exhibiting of bookings of all leasings and lettings of such houses; to require certain stipulations in all subsequent leases and renewals for a term; providing penalties for violation of the provisions of this Act, and declaring an emergency." And the emergency clause is as follows: "The fact that owners and lessees of such public houses of amusement are by reason of the power and influence of the theater trust, prevented from leasing and letting such houses to any person, company or concern not owned, booked or controlled by said trust, creates an emergency and an imperative public necessity, requiring the suspension of the constitutional rule that bills be read on three several days, and the same is hereby suspended, and that this act take effect and be in force from and after its passage, and it is so enacted." In our judgment, this article 1480 is not in conflict with article 302 of the Penal Code. The purpose of its passage was entirely at variance with the idea that it was intended to or had the effect of repealing article 302. It is in no sense inconsistent with it by its terms. It deals with buildings, constructed, fitted and equipped for certain purposes named therein, declares them to be public houses of amusement subject to regulation by "ordinance, statute or other law." Article 302 deals with the business conducted and not with the structure in which the business is situated. If, however, article 1480 is construed to apply to the exhibitions as well as the houses in which they occur, its effect is to declare a moving picture show a public house of amusement, subject to regulation by statute.

It is urged also that an ordinance of the City of Fort Worth, which was as follows: "No place of amusement shall be open or operated between the hours of 12 p. m. and 8 a. m. on week days nor between the hours of 12 p. m. Saturday and 2 p. m. on Sunday following. That

all other hours of the day or night it shall be lawful to open and operate such places, provided they comply with the terms of this ordinance," made it lawful for the appellant to conduct his business within the hours permitted on Sunday, it appearing from the evidence that the offense charged was within the permitted hours. Said ordinance was in conflict with the State law. The State law (art. 302, P. C.) prohibiting the conduct of the business for which appellant is prosecuted, the ordinance of the City of Fort Worth could not have the effect of suspending the operation of the State law. This was held by the Court of Civil Appeals at Austin in an opinion by Judge Key in the case of Burton v. Dupree, 46 S. W. Rep., 272, and by the Supreme Court in an opinion by Chief Justice Brown in Brown Cracked Co. v. Dallas, 104 Texas, 294, from which we quote as follows:

"By this language bawdy houses are prohibited in every part of the City of Dallas except the territory designated 'within which district in accordance with article 362a of the Penal Code of the State of Texas, they shall hereafter be confined.' This language compels such houses and their inmates to be and remain in that district, if they be in Dallas. The fourth section provides for regulating their conduct and guarding the inmates from disease, presumably to protect male visitors. An argument to demonstrate that the ordinance permits such houses to exist in that district would be inexcusable, the language is too plain to require explanation or application.

"The ordinance is plainly in conflict with article 361, copied above, which denounces the penalty of extermination against all such places and houses and practices, and, upon conviction, inflicts a penalty of two hundred dollars and twenty days imprisonment upon all persons for each day they may be concerned in operating them. The antagonism between the ordinance and the law is as emphatic as that between life and death.

"It follows logically that both laws can not be in force in that territory at the same time, and it devolves upon this court to determine which is to be maintained. As before stated, the law of the State, if in force, must prevail, and the inquiry now reaches that point, upon which the decision of this case must depend. In Davis v. State, 2 Texas Court of Appeals Reports, 425, it was held, in effect, that a provision in the charter of the City of Waco similar to that under consideration had the effect to suspend the State law on the same subject. In that case the court cites State v. Clark, 54 Mo., 17, which sustains that view of the question, but no reference is made to anything in their Constitution that would affect the question. Our Constitution at the time the Davis case was decided was materially different from article 1, section 28, of the present Constitution, which reads:

" 'No power of suspending laws in this State shall be exercised except by the Legislature.'

"The present Constitution omits at the end of this section the words, 'or by its authority,' which words were in that section of all former

Constitutions.  Under the former Constitutions it might have been, and probably should have been, held that the provision in the charter authorizing the city 'to regulate and segregate,' etc., such houses, gave authority to such city to suspend the State law on the same subject, and that the enactment of such an ordinance would have that effect.

"In Burton v. Dupree, 19 Texas Civ. App., 275, Judge Key, in his usual succinct and forcible style, points out the difference between the former and present provisions of our Constitution and states clearly the effect such change must have upon this question.  Quoting the present section 28 of article 1 of the Constitution, that learned judge says:

" 'This section restricts the power to suspend laws to the Legislature, and expressly prohibits the exercise of such power by any other body.  In view of this provision of the Constitution it must be held (whatever may have been the power of the Legislature under former Constitutions) that that body can not now delegate to a municipal corporation or to anyone else, authority to suspend a statute law of the State.  We, herefore, hold that the provisions of the Penal Code referred to were and are in force within the entire limits of the City of Waco, as well as elsewhere in the State, and that the lease contract in question, being knowingly made for the purpose of assisting in the violation of a penal law, is contrary to public policy, and not enforceable in the courts.'

"Since the amendment of the Constitution the Court of Criminal Appeals has held in accordance with Judge Key's opinion.

"If it be admitted that the Legislature intended to confer upon the City of Dallas authority to suspend article 361 within the district laid out, that provision of the charter would be void, because in conflict with section 28 of article 1 of our present Constitution.  The Legislature had no authority to delegate that power to the city."

Other authorities in point are:  Arroyo v. State, 69 S. W. Rep., 504; Ex parte Ogden, 43 Texas Crim. Rep., 532; McDonald v. Denton, 104 Texas, 206, 135 S. W. Rep., 1148; Fay v. State, 44 Texas Crim. Rep., 381.

The judgment of the lower court is affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge (dissenting).—I can not concur in the disposition of this case.  I believe it ought to be reversed and the prosecution dismissed.  I will, if time affords, later write some of the views for my non-concurrence.

DAVIDSON, Presiding Judge (dissenting).—When the opinion herein was handed down I entered my dissent, intending at the time to write some additional views for dissenting that were not given in Ex parte Lingenfelter, 64 Texas Crim. Rep., 30, but under the pressure of delayed cases and the heavy docket I did not write during the last term of court, nor in vacation.  While there are reasons that were not

presented by my dissenting opinion in the Lingenfelter case why moving picture shows are not brought within the Sunday law, yet at this late date I do not care to write further. I am clearly of opinion that the majority of the court are in error in this case, as they were in the Lingenfelter case, supra.