## S. F. LAGOW v. THE STATE.

### No. 5071. Decided March 12, 1919.

**1.—Aiding the Escape of Prisoner—Insufficiency of the Evidence—Accomplice.**

One who is in jail who merely accepts the means by one outside to effect his escape, is not within the accomplice rule, but where he conspires to liberate others he is an accomplice, and unless his testimony is corroborated by other evidence it is not sufficient to sustain the conviction.

**2.—Same—Circumstantial Evidence—Insufficiency of the Evidence.**

Where upon trial of aiding in the escape of a prisoner in jail, the theory of the State was that the defendant conveyed a certain file into the jail with which the prisoner affected his escape, and the testimony was wholly circumstantial, the inference that defendant abstracted this file from a certain place must exclude every other reasonable hypothesis, which in the instant case it not only failed to do, but the evidence was insufficient, taking the same as a whole, to sustain the conviction. Following Lagow v. State, 197 S. W. Rep., 217.

Appeal from the District Court of Hale. Tried below before the Hon. R. C. Joiner, judge.

Appeal from the conviction of aiding the escape of a prisoner in jail; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*W. W. Kirk,* for appellant.

*E. A. Berry,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant's conviction was upon a charge that he conveyed a file to one Crockett, a prisoner in jail, for the purpose of aiding said Crockett to escape.

The conviction rests upon circumstantial evidence alone. Material and essential circumstances were testified to by Crockett, the prisoner in jail named in the indictment, who was under a charge of felony. If the offense was committed, this witness was an accomplice. According to the State's theory the appellant threw a certain file against the jail in which Crockett was confined pursuant to an agreement with Crockett and another prisoner for their use in making their escape. It fell on the ground near a window and was picked up by Crockett, and by him conveyed into the jail and concealed. His testimony, connected him with the commission of the crime in a manner that make his testimony subject to the statutory rules governing accomplice testimony. On this subject the statute declares:

"A conviction cannot he had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense." Vernon's Texas Crim. Stats., Vol. 2, p. 732, Art. 801.

From the testimony of Crockett there was a conspiracy to which he and appellant and the other prisoners were parties to secure the escape from the jail, not of Crockett alone but of the other prisoners as well. He and the other prisoners, according to his statement, had talked the matter over before the appellant was put in jail, and the key which Crockett was making was partly completed before the appellant was put in jail, and the object in obtaining the smaller file was that the key might be completed and used by the appellant and his co-conspirators. Under this state of facts he having, as he says, conveyed the file into the jail after appellant put it within his reach, would have been an accomplice. It seems that one incarcerated who merely accepts the means provided by one outside to affect his escape is not within the accomplice rule. Peeler v. State, 3 Texas Crim. App., 533; Veal v. State, 56 Texas Crim. Rep., 220. A different rule applies, however, where the purpose is the liberation of others. Hillian v. State, 50 Ark., 523, 8 S. W. 934; Luke v. State, 49 Ala., 30; State v. Duff, 122 N. W., 829.

The criminating testimony given by the accomplice was in substance that, at the time the offense was committed he was confined in jail on a charge of felony, and had been there confined for some months. The appellant was placed in jail and remained part of a day and one night. The witness Crockett had procured a piece of steel, and was in possession of what he described as a twelve inch file, which had been in jail for some time, and with which it is not claimed appellant had any connection. There were two other prisoners in jail, one Hampton and one Waggener. While thus engaged he, in a conversation with Hampton, expressed a desire for a smaller file in order that he might complete the key, when the appellant, who was present, said that he had about the size and kind of file that was wanted. That nothing further was said about the file at that time. Hampton said that he had some saw blades, and told appellant where they could be found. Appellant said that he did not care for the information; that he had a friend in the garage business from whom he could get all the saw blades he needed, stating that he had "the guts to put anything in jail." This conversation, witness said, took place on Saturday evening, and he obtained the file the following day. He described the manner of obtaining it, in substance, as follows: "I saw Mr. Lagow around at the jail that afternoon. When I first saw him he was right east of the window and I was standing inside of the cell. It was about two o'clock in the afternoon. What caused me to see him was he hollored 'Hello boys.' Lagow was on the east side of the jail, and I came out of the cell into the run-around, and back to the window. While doing so I heard something hit the wall about the window. It made a noise that sounded like steel. When I reached the window

I did not see Mr. Lagow, but threw my eyes down and seen the file, and picked it up an hid it. A few minutes later I saw Mr. Lagow again. He was at the fence some ten feet from the window where I could talk to him. He asked us how we were getting along, and I said all right. When he was leaving he said to us, 'good-bye' and I told him 'much oblige,' and he said 'All right boys.' He did not ask me anything about what I was thanking him for. Hampton was standing by the window at the same time, both facing the window.'' Hampton was not present at the trial and did not testify as a witness.

Waggener testified as a witness for the defendant, and contradicted Crockett's testimony concerning the conversation which he said took place while the appellant was in jail. About a week after the appellant was released from jail the sheriff, on searching the jail, found a key which Crockett had made and two files, one the twelve inch file which was mentioned by Crockett, and had been in jail for some time, and an eight inch file. The latter was of a brand of make of files which were used by the Santa Fe Railway Company, which had a station at Plainview where the offense is charged to have been committed. There was no direct testimony that the appellant had ever been in possession of the eight inch file, but the State sought by circumstances to connect him with the possession of it. The circumstances relied upon were, in substance, that the appellant had been an employee of the said railway company, his duties consisting in work at the coal chute and at the pump house. These were about four hundred yards apart. It appears that another employe had charge of the pump house at night, and had keys to it, and that appellant's duties required him to do some work there in the mornings. The exact time of his terminating his service with the railroad is not disclosed, but it appears that he received an injury about the tenth or eleventh of August, and was put in jail about the same time. A bridge foreman named Kraft had in July made requisition upon the company's agent at Amarillo for some supplies, including a dozen eight inch files. The company operated a supply train, going over the road once a month, and the supplies, including a box which was supposed to contain a dozen eight inch files, were sent on this supply train, which, according to the evidence, reached Plainview some time on the 8th of August, at which time Kraft had transferred his bridge gang to Stanton, another station on the same railroad, and the supplies which he had ordered were left at Plainview apparently by the crew of the supply train, though they were not left in charge of anyone so far as the evidence discloses. The company's agent said that on receiving an inquiry about the supplies, and having no knowledge of them, he looked them up and finally found them in the pump house. He made no examination of them, but directed Munger, the

man who was in charge of the pump house, to ship them to Kraft at Stanton, and Munger said that he did ship them, though the date he did so is not disclosed. Munger made no examination of the articles, but says he saw a box with some articles in it, and a bundle of handles, which he shipped on one of the rail-road company's trains to Kraft at Stanton. The shipment was received by Kraft, according to his testimony, on the 18th of August, but the box containing the files had been opened and contained, when received by him, only nine files. The State's testimony showed that it was the custom of the employes, in the event they needed for the use of the company any of the supplies that were in a shipment, to take them out and make use of them.

The only circumstances which we find from reading the record, which would have been sufficient to have met the requirement of the statute that the accomplice be corroborated by evidence tending to connect the appellant with the offense, would have been proof that appellant was in possession of the eight inch file which was found in jail. This, of course, could have been established by circumstantial evidence. But before the possession of the file by the appellant could become the basis for an inference that he caused it to be conveyed to the jail, it was necessary that his possession of it be established beyond a reasonable doubt by evidence meeting the legal test upon circumstantial evidence.

The question is, do the facts proved meet this requirement? In other words, do the facts proved relative to the file authorize the inference by the jury that appellant abstracted one of the files which was shipped to Kraft? To justify this inference, the evidence showing that he did abstract it must exclude any other reasonable method by which its absence from the box which reached Kraft, could, under the evidence adduced, be explained. It is not shown that the agent at Amarillo counted the files that were placed in the box, but we gather from his testimony that he filled the order or requisition by shipping a box supposed to contain a dozen files. Assuming that it did contain a dozen, no member of the crew of the supply train which conveyed the shipment from Amarillo to Plainview was introduced to negative the fact that pursuant to the custom mentioned some of the files in the box were abstracted while the shipment was enroute. It is not shown to whom the shipment was delivered when same reached Plainview. No information is given concerning them when they first arrived there, but the only testimony upon the subject is that after the agent received an inquiry from Kraft, he located a box and a bundle of handles situated in the pump house, and that he directed Munger, who had charge of the pump house, to ship them to Kraft. Neither Munger nor the agent made any examination or learned the contents of the box, nor was there proof made that the missing files were not abstracted

after they were shipped from Plainview and before they reached Kraft at Stanton. The presumption that appellant abstracted the files rests upon the presumption that the box when originally shipped contained a dozen files; that when it reached Kraft there were only nine files in it, and while it was in the pump house appellant had the opportunity to make the abstraction. The pump house itself was accessible to others. Appellant's main duties placed him four hundred yards away from it while he was at work for the company. No reason is suggested for his obtaining the files prior to his incarceration in the jail and his supposed conversation with Crockett. It is not shown with any degree of certainty that the files had not been shipped from Plainview before the appellant was released from jail. Crockett's testimony touching the alleged conversation with the appellant, and touching his supposed throwing of the file from the fence to the jail, is not available on this phase of the case, but it was essential, to corroborate Crockett, to show by other testimony than his own the possession of the file by appellant. The only other circumstance that could be relied upon to corroborate Crockett, is the fact that appellant was present at the jail on Sunday following his release on Saturday. Crockett admits that at the time there was another person present. The appellant introduced two witnesses, apparently disinterested, who claim that they reached the jail at at the same time that the appellant did; that they heard none of the conversation at the jail described by Crockett; that they were in a position to hear it, and were in a position to have seen the file in appellant's possession, and to have seen him throw it if it had been done, but they negative the fact that they did see it. One of them testified that he threw to one of the inmates of the jail a half dollar in silver, and that it struck the building and made a noise.

On the cogency of the evidence as a whole, tested by the rules of circumstantial evidence, it appears from the testimony of the State's witnesses that Crockett and Hampton were both desirous of release from jail; that they planned an escape and discussed the means, including procuring some instrument to aid them. Crockett had a wife and several children who resided in the vicinity and who frequently visited him, his wife having visited him on the day before he claims to have obtained the file. He said he did not obtain the file from his wife. She did not testify. Hampton was also visited by various persons, friends of his, members of a carnival company. Their visits were made after the time that Crockett claims to have received the file but before the time the file was found in the jail by the sheriff. The jail was in the basement of the courthouse on the public square, which was frequented by the public generally, and the jail was protected by an open iron fence situated ten feet from the jail windows.

It was shown that prior to the time that the appellant entered the jail not only the twelve inch file, which has been mentioned, was in the jail, but the sheriff said that for months prior to the date of the alleged offense he had from time to time, on searching the jail, found articles suitable for and intended as a means of escape, including skeleton keys and other articles. The appellant was a man fifty odd years of age, had a wife and two married daughters living in the community, and so far as the evidence discloses had no interest in Crockett, nor in securing his relase, or that of other persons. He testified himself denying all of the incriminating facts, and proved by his wife and daughters his movements from the time he was released from jail until the time that Crockett claims to have received the file, their testimony tending to negative any opportunity on his part to have gone to the pump house, or to have otherwise obtained the file during the time mentioned. The jury would have been authorized to have rejected or disbelieved the testimony of the appellant and that of his witnesses on controverted matters. They were not, however, authorized under the law to convict him upon the testimony of Crockett, unless they believed that Crockett's testimony was true, that it showed in connection with other evidence the guilt of appellant, and was corroborated by other testimony tending to connect the appellant with the commission of offense. The evidence is not of a conclusive nature, aside from the fact that its essential elements are supported alone by accomplice testimony. Lagow v. State, 82 Texas Crim. Rep., 1, 197 S. W. Rep., 217. The file found in the jail by the sheriff and identified as of the same make as many in use by the railroad company, and distributed among its employes, was not discovered for about a week after appellant's release from the jail, and before and after his release there were many opportunities for others to have conveyed the file to the jail, with strong motives, to aid the prisoners to secure their liberty, and some of these other persons were not shown to have failed to take advantage of these opportunities. Conceding, however, that if the file had been satisfactorily traced to appellant's possession the evidence would have been sufficient to support the verdict, we do not think the proof establishes such possession, and are of the opinion that the verdict should have been set aside by the trial court.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*