

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-08-00123-CR
_____

ALLEN RAY SHIPP, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 22669

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

O P I N I O N

In the aftermath of his arrest for attempting to pass a forged Wal-Mart receipt and while he was being processed into jail in Fannin County, Allen Ray Shipp was searched, and officers found in his wallet an item that appeared to be a temporary Texas driver's license bearing the name Dan Butner and a license number belonging to a person named Muelstein from Terrell, Texas. As a result, Shipp was charged with forgery of a government instrument, that is, a driver's license. *See* TEX. PENAL CODE ANN. § 32.21 (Vernon Supp. 2008). In this case (trial court case number 22669), Shipp was convicted, his sentence was enhanced with prior convictions, and he was sentenced to twenty-five years' imprisonment. In companion cases, Shipp was charged and convicted of two other offenses: in our case numbered 06-08-00122-CR (trial court case number 22668), Shipp was convicted on a charge of possession of a controlled substance in a drug-free zone and sentenced to sixty years' imprisonment, while in our case numbered 06-08-00124 (trial court case number 22670), Shipp was convicted on a charge of forgery of a commercial instrument and sentenced to twenty years' imprisonment and a fine of $10,000.00. From the bench, the trial court initially ordered Shipp's sentences to be served concurrently, but later changed the ruling and ordered the sentences to be served consecutively.

In points of error common to all three appeals, Shipp asserts that running the three sentences consecutively was error and a violation of his due process rights. We overrule Shipp's due process point of error. For the reasons stated in our opinion in our cause number 06-08-00122-CR, that is,

2

for lack of proof of a drug-free-zone violation in that case, we reform the judgment in this case to provide that Shipp's sentence for forgery of a government instrument shall run concurrently with his sentence in that companion case. In the third case, our cause number 06-08-00124-CR, we are reversing Shipp's judgment of conviction and rendering a judgment of acquittal.

In this case, Shipp's appeal attacks the legal and factual sufficiency of the evidence to support his conviction on the elements of proof that the "temporary license" was a forged instrument and that he possessed the license with intent to harm or defraud another or with intent to utter the license. Finding legally and factually sufficient evidence to support those elements of proof, we overrule those points of error. As modified, the judgment of the trial court in this case is affirmed.

In this opinion, we address Shipp's point of error unique to this appeal: his attack on the legal and factual sufficiency of the evidence to support his conviction for forgery of a governmental instrument.

In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Roberts v. State*, 220 S.W.3d

3

521, 524 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006); *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). We may use a hypothetically correct jury charge to evaluate both the legal and factual sufficiency of evidence. *Grotti v. State*, 273 S.W.3d 273, 280–81 (Tex. Crim. App. 2008).[1]

> The indictment charged Shipp did
>
> *with intent to defraud or harm another*, possess *with intent to utter* a writing that had been made so that it purported to be the act of another who did not authorize the act, and said writing was a temporary Texas driver's license purported to be issued by the Texas Department of Public Safety.

(Emphasis added.)

The elements of forgery by possession with intent to utter are (1) a person (2) "forges" (3) a writing (4) with intent to defraud or harm (5) another. TEX. PENAL CODE ANN. § 32.21(C); *Burks v. State*, 693 S.W.2d 932, 936 (Tex. Crim. App. 1985). In "possession" cases, the term "forge" in Section 32.21(C) means "to possess a writing that is forged within the meaning of Paragraph (A)[2]

---

[1]We find the trial court's charge to the jury used in this case to have been in substantial if not complete compliance with the applicable law, and thus, the equivalent of a hypothetically correct charge.

[2]    (A) to alter, make, complete, execute, or authenticate any writing so that it purports:
    (i) to be the act of another who did not authorize that act;
    (ii) to have been executed at a time or place or in a numbered sequence other than was in fact the case; or
    (iii) to be a copy of an original when no such original existed;

TEX. PENAL CODE ANN. § 32.21.

with intent to utter it in a manner specified in Paragraph (B)[3] of this subsection."  While evidence of a passing or attempted passing of a forged instrument would certainly aid the State in proving a case of possessing a forged instrument, such evidence is not absolutely essential. *Burks*, 693 S.W.2d at 936.

Because evidentiary sufficiency is questioned, we set out, here, more of the salient facts before our analysis of the issues.  Bonham police arrested Shipp for attempting to pass a forged Wal-Mart receipt as he was leaving the store with a computer and computer desk; the forged receipt purported to evidence proof of payment for the two items.[4]  Officers performed a search of Shipp's car incident to the arrest.  In the center console of the car, officers found methamphetamine and drug paraphernalia, a temporary driver's license bearing the name of Carol Shipp (Shipp's wife, who was also present at the scene), and a "permanent" Texas driver's license bearing Shipp's name and picture.  Officer Josh Walker described that license as having "certain items . . . ground off."  The upper right corner of the license was cut away; Walker said he believed the corner was cut off by the Department of Public Safety (DPS) to invalidate the license.  Around the same time that Shipp was being detained and arrested for the false Wal-Mart receipt, Carol was also arrested for having given Bonham police a driver's license that appeared false.  That license appeared to have been

---

[3]"(B) to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A)."  TEX. PENAL CODE ANN. § 32.21.

[4]We refer the reader to our opinion in cause number 06-08-00122-CR for a detailed recitation of activities leading to Shipp's arrest.

"altered . . . [t]he number was raised, wasn't flat like a normal driver[']s license.  It had clear tape over it."  Officer Tammy Bohler, who made contact with Carol and received her license, said she checked the number on Carol's license.  Instead of belonging to Carol, the number belonged to a woman in Houston.  Carol was arrested for "altering a driver[']s license."

During the book-in process at the Bonham jail, Walker found a temporary driver's license in Allen Shipp's wallet.  This temporary license, however, did not bear Shipp's name.  Rather, it was issued to one Dan Butner.[5]  Walker said that when he checked the identifying number on that temporary license, though, the number belonged to neither Butner nor Shipp, but to a person named Muelstein from Terrell.[6]

Walker testified to other things he found suspicious about the temporary license found in Shipp's wallet.  In Walker's experience, Texas temporary licenses have perforated edges, as contrasted with this one, which had smooth edges as if cut by "scissors or a knife, some sharp edged instrument."  Walker also thought the authorizing signature on the license appeared to be photocopied or smeared:

---

[5]With the Shipps at Wal-Mart was their daughter, Courtney Butner.  There is no indication that there was any relation between Courtney Butner and anyone named Dan Butner.

[6]Initially, Walker said when he ran Carol's temporary license, it pointed to someone named Muelstein in Terrell; he later indicated to some confusion, but that, in fact, it was the Butner license from Allen's wallet that had the number that pointed to Muelstein, and that Walker was not sure if he ever ran the number on Carol's temporary license.  Bohler said that she ran the number on Carol's permanent license and it pointed to a woman from Houston.

Q [State]: Now, from your experience with temporary DLs, when a DPS officer or employee, whoever signs them, is that a printed signature or is that - -

A [Walker]: No.

Q: How is that done?

A: No, it's an actual printed signature, I believe.

Walker also said the license on which the temporary license was printed was "not of the same weight" and felt "lighter" than other temporary licenses he had handled.

At trial, Shipp presented testimony from Sheila Faye Jacobs, his mother. She told the jury that a week and a half or two weeks before the events at Wal-Mart, Shipp brought over a used car he had just purchased, the Chevy Equinox Shipp would later have at the Wal-Mart parking lot. Shipp brought the car to show his mother, and as Jacobs was looking around, sitting in the driver's seat, she found a paper driver's license stuck between the seat and the center console. Jacobs recalled the license was issued to "a Don or Dan or Donald, something like that." She said she advised Shipp to turn the license in when he finished the paperwork attendant to purchasing the vehicle, and the license did not look to be altered to her.

We find there is legally and factually sufficient evidence to support the jury's finding of guilt for the charge of forgery of a government instrument. We have summarized some of the suspicious circumstances surrounding Shipp's possession of this temporary license. In addition to the license's inconsistent name and identifying number information, the "Butner" license misspells the city of Bonham. The clarity of the seal is noticeably less than the seal on Carol's temporary license; and in

7

addition to Walker's opinion that the DPS signature appears not to be an original, we note that the signature crosses the printed "DL EMPLOYEE" in exactly the same spot as on Carol's temporary license. There are several items of information which are identical between the two temporary licenses. And on the "Butner" license, there is a noticeable inconsistency in the line of the date of birth, where the year is slightly higher than the month and date.

There was substantial evidence from which the jury could conclude the temporary license in Shipp's wallet was forged: there are visible inconsistencies in the document, plus Walker's testimony that the name and identifying number on the document do not coincide.

There may be, however, some question of whether the evidence sufficiently proves Shipp possessed the license with intent to harm or defraud or to utter. The State offers no caselaw to argue

the evidence was sufficient to show Shipp had intent to harm or defraud,[7] or intended to utter the temporary license. Shipp offers no authority to question whether intent was proven.

In argument before the trial court, the State claimed that Carol had testified that Shipp had "forged for her" the altered driver's license Carol presented to Bohler. Actually, though, at trial Carol said that her permanent driver's license "had another number over the top of it." As for how that label came to be present, she said, "It was printed out on a label. I put it on top of it." She denied falsifying any other licenses, and claimed that shortly[8] before Allen's trial, when she pled to two

---

[7]There is a provision in Section 32.21 that provides a presumption of intent to harm or defraud:

> A person is presumed to intend to defraud or harm another if the person acts with respect to two or more writings of the same type and if each writing is a government record listed in Section 37.01(2)(C).

TEX. PENAL CODE ANN. § 32.21(f). The State asserts, without subsequent argument or authority, that this presumption applies. Neither party to the instant appeal addresses whether a temporary and permanent license constitute "two or more writings of the same type," and we have found no cases addressing this definition. *See* TEX. PENAL CODE ANN. § 32.21(f). It is true that Shipp was in possession of two driver's licenses, one "permanent," or a typical plastic identification card with his name and picture, but which appeared to have information "ground off"; and the temporary license in the name of a person named Butner, but with an identification number corresponding to a third person. It is also true that the temporary license in Carol's name, found in the center console, had much data identical to that on the "Butner" temporary license. Because we find legally and factually sufficient evidence to establish Shipp's intent to defraud or harm another, we do not find it necessary to evaluate whether the presumption applies.

[8]The State's question at that point in the testimony was actually, "That wasn't your story a couple of days ago, was it?" However, throughout the rest of the questioning of Carol, multiple references were made to her testimony at her plea hearing on or around May 1, 2008, approximately two weeks before Shipp's trial.

9

felony charges, she then falsely accused Shipp of having falsified her driver's license. We point out that this is one of the numerous times in Carol's testimony where, from the context of the State's questioning and her answers, she appeared to contradict if not refute statements she had made at her plea hearing two weeks before testifying at Shipp's trial. Obviously, the jury was in the best position to weigh Carol's credibility and to believe some, all, or none of her testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979) (stating jury is exclusive judge of facts and of weight given to testimony); *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

The intent to defraud or harm another may be established by circumstantial evidence. *Williams v. State*, 688 S.W.2d 486, 488 (Tex. Crim. App. 1985). Here, there were ample suspicious circumstances on which a rational jury could find, beyond a reasonable doubt, that Shipp possessed the temporary license with intent to harm or defraud: both Shipp's possessing two forged or suspicious licenses, the similarities in the temporary licenses, the presence of forged Wal-Mart receipts, and the defaced or altered appearances of both Carol's and Shipp's permanent driver's licenses. Similarly, despite the testimony of Shipp's mother as to the origin of the temporary license, we cannot say that the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust.

As for Shipp's possessing the license with intent to utter it, neither side offers authority one way or another. We have found no cases addressing the intent to utter as it pertains to driver's licenses or similar identification documents. But just as intent to harm or defraud can be proven by circumstantial evidence, intent to utter can be proved in the same manner. Just as there is, in this record, ample evidence of intent to harm or defraud, the same evidence is ample evidence of intent to utter. The contrary evidence does not outweigh the evidence tending to prove intent to utter.

We find the evidence to be both legally and factually sufficient to support the verdict, and overrule Shipp's points of error challenging the evidence.

As modified to provide that the sentence will run concurrently with the sentence in cause number 06-08-00122-CR, we affirm the judgment in this case.

Josh R. Morriss, III
Chief Justice

Date Submitted: April 27, 2009
Date Decided: July 23, 2009

Publish

11