**Allen Ray SHIPP, Appellant,**

v.

**The STATE of Texas.**

**No. PD–1346–09.**

Court of Criminal Appeals of Texas.

Feb. 2, 2011.

David A. Schulman, Austin, for Appellant.

Lisa C. McMinn, Asst. State's Atty., Jeffrey L. Van Horn, State's Attorney, Austin, for State.

### OPINION

PRICE, J., announced the judgment of the Court and delivered an opinion in which KEASLER, HERVEY and COCHRAN, JJ., joined.

The appellant was indicted for the offense of forgery under Section 32.21 of the Texas Penal Code.[1] Because the jury found that the counterfeit writing he passed, a

---

1. *See* Tex. Pen.Code § 32.21(b) ("A person    commits an offense if he forges a writing with

purported store receipt, constituted a "commercial instrument," it convicted him of a state jail felony under Section 32.21(d).[2] The Sixth Court of Appeals found the evidence insufficient to support conviction for a state jail felony, however, holding that there was no evidence to show that a store receipt constitutes a "commercial instrument" in contemplation of the statute.[3] We granted the State Prosecuting Attorney's [SPA] petition for discretionary review in order to address whether the court of appeals has correctly construed the statute.[4] We will reverse the court of appeals's judgment and reinstate the judgment and sentence of the trial court.[5]

## FACTS AND PROCEDURAL POSTURE

The appellant was originally indicted for passing a "writing," namely "a store receipt that purported to be a valid receipt issued by ... Wal–Mart ... to indicate the sale of merchandise." [6] Prior to trial, the State amended the indictment to replace "writing" with "commercial instrument," thereby exposing the appellant to prosecution for a state jail felony.[7] Because the indictment also alleged two prior, sequential felony convictions, the appellant was ultimately susceptible to punishment as a second degree felon.[8]

At trial,[9] the evidence, viewed in the light most favorable to the verdict, showed

---

intent to defraud or harm another.").

2. See TEX. PEN.CODE § 32.21(d) ("An offense under this section is a state jail felony if the writing is or purports to be a will, codicil, deed, deed of trust, mortgage, security instrument, security agreement, credit card, check, authorization to debit an account at a financial institution, or similar sight order for payment of money, contract, release, or other commercial instrument.").

3. *Shipp v. State*, 292 S.W.3d 267, 276 (Tex. App.-Texarkana 2009).

4. See TEX.R.APP. P. 66.3(d) (one of this Court's considerations in deciding whether discretionary review is appropriate is that "a court of appeals ... appears to have misconstrued a statute").

5. The court of appeals expressly declined to reform the judgment to reflect conviction for the Class A misdemeanor offense of forgery of a simple writing because the jury charge did not include an instruction authorizing conviction for that lesser included offense as an alternative. *Shipp v. State, supra.* For this proposition, the court of appeals relied upon our recent opinion in *Haynes v. State*, 273 S.W.3d 183 (Tex.Crim.App.2008), in which we refused to overrule our earlier opinion in *Collier v. State*, 999 S.W.2d 779 (Tex.Crim. App.1999). *Id.* In his second ground for review, the SPA once again urges us to overrule *Collier*. Given our ultimate disposition of the SPA's first ground for review with respect to

the sufficiency of the evidence to support the greater offense, we need not reach this second ground for review.

6. Thus, it appears that the appellant was originally indicted for what amounts to no more than a Class A misdemeanor offense. TEX. PEN.CODE § 32.21(c). It does not appear that the appellant ever challenged the jurisdiction of the district court to preside over the case. Instead, he opted to wait and challenge the indictment as it was subsequently amended. *See* note 7, *post*.

7. In a motion to quash, the appellant challenged the indictment as so amended, claiming that a store receipt does not constitute a "commercial instrument." The trial court correctly ruled that this is a matter of proof, not a question of the adequacy of the charging instrument, and denied the motion to quash. *See State v. Rosenbaum*, 910 S.W.2d 934, 948 (Tex.Crim.App.1995) (op. on State's motion for reh'g) (adopting dissenting opinion on original submission, which had argued that "[a]n indictment must be facially tested by itself under the law, as a pleading; ... it can not be ... defeated by evidence presented at pretrial").

8. TEX. PEN.CODE § 12.42(a)(2).

9. Trial on this indictment was consolidated with trial on two other indictments accusing the appellant, respectively, of possession of a

that the appellant attempted to wheel a shopping cart containing a computer and a computer desk out of a Wal–Mart in Bonham. An employee stopped the appellant to check his store receipt against the items in the cart and discovered a number of discrepancies. On closer inspection, the receipt proved to be a forgery. At the close of the State's evidence, the appellant requested a directed verdict, arguing that the store receipt did not amount to a "commercial instrument" in contemplation of Section 32.21(d) of the Penal Code.[10] The trial court denied the request, and the jury found the appellant guilty of forgery of a commercial instrument, found the enhancement counts to be true, and assessed his punishment at twenty years' imprisonment and a fine of $10,000.[11] On appeal, the appellant challenged the sufficiency of the evidence to support his punishment as an enhanced state jail felon. He contended that, because the store receipt was a mere "writing," not a "commercial instrument," he should only have been prosecuted and punished as a misdemeanant under Section 32.21(b), not as an enhanced state jail felon under Section 32.21(d).

The court of appeals agreed. Finding no statutory definition of "commercial instrument," the court of appeals also concluded that it "is not a phrase in common use[.]"[12] It found little guidance from the paucity of cases—unpublished at that—that have addressed the meaning of the term.[13] In the absence of "any persuasive or controlling caselaw addressing this issue,"[14] the court of appeals resorted to an established canon of statutory construction, the rule of *ejusdem generis*.[15] Applying that rule to construe the phrase "other commercial instruments" in Section 32.21(d), the court of appeals set out a list of definitions of the writings specifically

---

10. The applicant's trial counsel argued that "commercial instrument" must be construed to mean a negotiable instrument. The trial court rejected this argument, holding that while a negotiable instrument does constitute a commercial instrument, it does not exhaust the class of commercial instruments under Section 32.21(d). The court of appeals likewise declined to adopt the appellant's limited understanding of "commercial instrument," pointing out that many of the "commercial instruments" that are specifically listed in Section 32.21(d) do not constitute negotiable instruments. *Shipp v. State, supra*, at 271–72 n. 2. This Court has since construed at least the bare term "instrument" to embrace more than just negotiable instruments for purposes of Section 32.21(e) of the Penal Code, in *Ramos v. State*, 303 S.W.3d 302 (Tex.Crim. App.2009).

11. The jury also found him guilty of possession of a controlled substance, imposing a sentence of sixty years, and of forgery of a government instrument, assessing a twenty-five year sentence. The propriety of those convictions is not before us in this petition for discretionary review.

controlled substance and forgery of a government instrument. The appellant consolidated his appeal of all three convictions. The court of appeals disposed of these appeals in three separate opinions. *See*, respectively, *Shipp v. State, supra*; *Shipp v. State*, 292 S.W.3d 251 (Tex.App.-Texarkana 2009); *Shipp v. State*, 292 S.W.3d 262 (Tex.App.-Texarkana 2009). For a more thorough recitation of the facts, unnecessary to an understanding of the issue addressed by our present opinion, we commend the reader to all three court of appeals opinions below.

12. *Shipp v. State, supra*, at 272.

13. *Id.* at 272–73 (citing and discussing *Graham v. State*, No. 14–97–00840–CR, 1999 WL 298274 (Tex.App.-Houston [14th Dist.], delivered April 13, 1999, no pet.) (not designated for publication), and *Runnels v. State*, No. 14–03–00657, 2005 WL 6345167 (Tex.App.-Houston [14th Dist.], delivered February 15, 2005, pet. ref'd) (mem.op.) (not designated for publication)).

14. *Id.* at 274.

15. *Id.*

enumerated in the statute, taken from a standard legal dictionary, and observed that each specific type of writing "either grants or cedes a valuable right." [16] Contrasting those specific writings to a store receipt, the court of appeals observed:

> an ordinary receipt simply memorializes a transaction that has previously occurred, a fait accompli, which provides no future benefit. A receipt is a "written acknowledgment that something has been received." [BLACK'S LAW DICTIONARY] at 1296 [8th ed.2004]. Although the testimony by the State showed many reasons why the fake receipt was faulty and demonstrated that such receipts can be cross-checked for veracity a number of ways, there was no testimony provided here to demonstrate that a receipt issued by this Wal–Mart store is anything more than the memorialization of a past transaction, as opposed to other kinds of things granting or ceding future benefits or rights listed in Section 32.21(d). Although we can conceive of situations in which a receipt might be used by some in more ways than those contained in the classic definition of the term, there is no evidence of that adduced in such a regard here. [17]

Thus finding that a store receipt is not of the same kind of "commercial instrument" as those expressly listed in Section 32.21(d), the court of appeals held that it cannot support a conviction for forgery as a state jail felony, and rendered an acquittal. [18]

Along the way, the court of appeals gratuitously opined that a definition of "commercial instrument" that the trial court submitted, without objection, in the jury charge at the guilt phase of trial, was erroneous and egregiously harmful to the appellant. The court of appeals seems to have believed that such a claim of trial error in the jury charge was somehow embedded in the substance of the appellant's legal sufficiency argument. [19] But the appellant's brief did not raise any issue on appeal, explicitly or implicitly, with respect to trial error in the jury charge. He argued exclusively that the evidence was legally insufficient to support a conviction for forgery of a commercial instrument. The court of appeals had no cause to address jury charge error in the context of resolving a point of error aimed exclusively

16. *Id.* at 274–75.

17. *Id.* at 275.

18. *Id.* at 276. *See* note 5, *ante.*

19. *See id.* at 272 ("Although the brief does not identify it in so many words, we conclude [the appellant's argument] to be a challenge to the jury charge."); *id.* at 275 ("Since, without saying so, this disagreement with the accuracy of the definition of 'commercial instrument' as employed in the jury charge amounts to an alleged jury charge error, we first determine whether sufficient harm resulted from the error to compel reversal."); *id.* at 276 ("the erroneous instruction made the difference between a guilty verdict and one that would be legally insufficient to support a finding of guilt. Under these circumstances, therefore, egregious harm resulted."). Perhaps the court of appeals believed that it was obligated to address potential jury charge error under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (opinion on reh'g), as part of its determination of how a hypothetically correct jury charge *would* have defined the term "commercial instrument"—an inquiry that we have said *is* necessary to resolution of any analysis of legal sufficiency. *See Shipp v. State, supra,* at 270–71 ("we use a hypothetically-correct jury charge to evaluate ... the legal ... sufficiency of the evidence" under *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997)). But it is not necessary to determine whether the definition actually *given* in a particular jury charge constitutes reversible error under *Almanza* in order to determine the hypothetically correct definition for purposes of a legal sufficiency analysis.

at legal sufficiency of the evidence, and we will not address it here. We granted the SPA's petition in order to evaluate the court of appeals's application of the rule of *ejusdem generis* to Section 32.21(d).

## EJUSDEM GENERIS

■ *Ejusdem generis* means, literally, "of the same kind."[20] The rule of *ejusdem generis* provides that "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."[21] It is one of those canons of statutory construction that may prove useful in determining the plain meaning of statutory language, that plain meaning constituting the best indicator of legislative intent to which we are bound to give effect.[22] The rule is best regarded as an aid to construction, however, and not an end unto itself;[23] it should never be invoked to trump otherwise manifest legislative intent.[24] If, for example, the specific terms exhaust the class of items enumerated in the statute, it must be presumed that any generic term that follows must refer to items transcending the class, since a contrary construction "would contravene the more important rule of construction that all words are to be given effect."[25] "The

---

20. 82 C.J.S. *Statutes* § 438 (2009), at 559.

21. Norman J. Singer & J.D. Shambie Singer, 2A Sutherland Statutory Construction § 47:17 at 357–60 (7th ed.2007) (citing, *inter alia*, *Perez v. State*, 11 S.W.3d 218, 221 (Tex.Crim. App.2000) (*ejusdem generis* "holds that in interpreting general words which follow an enumeration of particular or specific things, the meaning of those general words should be confined to things of the same kind")). *See Thomas v. State*, 65 S.W.3d 38, 41 (Tex.Crim. App.2001) (same); *Lefevers v. State*, 20 S.W.3d 707, 711 (Tex.Crim.App.2000) (same); *Thomas v. State*, 129 Tex.Crim. 628, 632–33, 91 S.W.2d 716, 718–19 (1935) (same); *Zucarro v. State*, 82 Tex.Crim. 1, 3, 197 S.W. 982, 983 (1917) (same); *Ex parte Roquemore*, 60 Tex.Crim. 282, 285, 131 S.W. 1101, 1103 (1910) (same); *Ex parte Muckenfuss*, 52 Tex. Crim. 467, 469–70, 107 S.W. 1131, 1132 (1908) (same).

22. *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991) ("if the meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning.").

23. *See* 82 C.J.S. *Statutes* § 438, at 562 ("Like other canons of statutory construction, ejusdem generis is simply a helpful guide to legislative intent, not a dispositive one, and it does not require a court to give it unthinking reliance.").

24. Singer & Singer, *supra* § 47:22, at 392 ("general words are not restricted in meaning to objects of the same kind (ejusdem generis) if there is a clear manifestation of a contrary intent"). *See also* 82 C.J.S. *Statutes* § 438, at 559 (*ejusdem generis* "does not apply if a contrary intent is clearly shown"); *id.* at 562 ("Ejusdem generis is by no means a rule of universal application, and its use is to carry out, not to frustrate, the legislative intent."); *Crum v. State*, 131 Tex.Crim. 631, 634, 101 S.W.2d 270, 272 (1937) (rule "does not control where it clearly appears from the statute as a whole that no such limitation was intended"); *Ex parte Roquemore*, *supra* (*ejusdem generis* applies "unless there be a clear manifestation of a contrary purpose"); *Ex parte Muckenfuss*, *supra*, (same).

25. Singer & Singer, *supra* § 47:21, at 390–91. *See also id.* at 391–92 ("In order to prevent their rejection as surplusage, the general words take an unrestricted meaning on the ground that the legislature, by the addition of general words to an exhaustive enumeration, must have intended that they have meaning outside the class."); *Crum v. State*, *supra* (rule does not apply "where the specific words embrace all objects of their class, so that the general words must bear a different meaning from the specific words or be meaningless"); *Ex parte Lingenfelter*, 64 Tex.Crim. 30, 44, 142 S.W. 555, 561 (1911) ("The enumeration of particular things is sometimes so complete and exhaustive as to leave nothing that can be called ejusdem generis. If the particular

indication that the general words have their full and natural meaning, regardless of their connection with a series of specific words, may be found in the context of the statute as a whole, by a consideration of its purpose."[26] Moreover, the scope of the class that is defined by the enumeration is sometimes, itself, ambiguous:

> The problem is to determine what unmentioned particulars are sufficiently like those mentioned to be made subject to the act's provisions by force of the general reference. In most instances there is a wide range of ways in which classes could be defined, any one of which would embrace all of the members in an enumeration. Germaneness to the subject and purpose of the statute, viewed in terms of legislative intent or meaning to others, is the basis for determining which among various semantically correct definitions of the class should be given effect.[27]

Finally, we must keep in mind that the provisions of the Penal Code are not to be strictly construed,[28] and that, in construing Penal Code provisions, we must apply certain provisions of the Code Construction Act.[29] With these considerations in mind, we turn to the court of appeals's application of the rule of *ejesdum generis* in the instant case.

## ANALYSIS

■ Section 32.21(d) does not plainly provide that forgery of a store receipt constitutes a state jail felony—at least not in the same way that it plainly provides that, *e.g.*, a will and a check and a contract do. Is it plain that the catch-all phrase that follows the specific list of writings in the statute, "other commercial instrument," was intended by the Legislature to include a store receipt? The court of appeals believed that the answer to this question turned on proper application of the rule of *ejusdem generis*, ultimately holding that a store receipt is not of the same class of "commercial instruments" as those "other" commercial instruments expressly enumerated in Section 32.21(d). All of the instruments expressly mentioned in the statute, in the court of appeals's view, "relate to legal rights or relationships: the right to take or cede possession of property rights or to hold another party to or release another party from contractually stated agreements."[30] Because a store receipt merely "memorializes" a past commercial transaction and does not "either grant or cede a present or future benefit or right" in the way that the enumerated commercial instruments do, the court of appeals held, it is not covered under the state jail provision of the statute.[31]

■ While we do not necessarily disagree with the court of appeals's characterization, it seems to us that the class it purports to identify—writings that "relate to legal rights or relationships"—is so broad as to be largely meaningless for

words exhaust the whole genus, the general words must refer to some larger genus. * * * [Under these circumstances], ... the maxim ejusdem generis must yield to the maxim that every part of a statute should be upheld and given its appropriate effect, if possible.").

26. Singer & Singer, *supra* § 47:22, at 394–96.

27. *Id.* § 47:18, at 382–83.

28. Tex. Pen.Code § 1.05(a).

29. *Id.* § 1.05(b) (Sections 311.011, 311.012, 311.014, 311.015 and 311.021 through 311.032 of Chapter 311 of the Texas Government Code (Code Construction Act) apply to construction of Penal Code).

30. *Shipp v. State, supra,* at 275.

31. *Id.*

purposes of applying the rule of *ejusdem generis*. The listed writings are of a widely variable nature, serving many different purposes. How is a will or a codicil like a check? How is a deed of trust or a mortgage like a credit or debit card? Although they all may be described as having some relation to commerce, that relationship is not in every case a very direct one, and the relationship to commerce is not always very similar from one enumerated example to the next.[32] They are not really of any discernable "kind" at all—at least not sufficiently so as to provide a fixed criteria for circumscribing the otherwise-broad ambit of the general language ("other commercial instruments") that follows, such that we may clearly say what is, or is not, "of the same kind" of commercial instrument as those that are expressly listed in the statute. We conclude that, even after ap-

plying the rule of *ejusdem generis*, it remains ambiguous whether the Legislature intended that a store receipt should constitute an "other commercial instrument" in contemplation of Section 32.21(d). Given the ambiguity we perceive in the statutory language, and in order to make sure we do not defeat the legislative purpose, we think it acceptable to consult extra-textual factors.[33]

One extra-textual factor we may consider is legislative history.[34] In discussing Section 32.21(d), as originally enacted in 1973, the Practice Commentary observed: "The middle range of penalties is provided by Subsection (d) for documents of commerce and property transfer."[35] In common legal parlance, "documents" are "[t]he deeds, agreements, title papers, letters, receipts, and other written instruments used to prove a fact."[36] A "document of com-

---

**32.** "Commerce" is defined as "[t]he exchange of goods and services[.]" BLACK'S LAW DICTIONARY 304 (9th ed.2009). But a will, for example, is a "legal expression of an individual's wishes about the disposition of his or her property after death[.]" *Id.* at 1735. In commercial law, "exchange" means "[t]he act of transferring interests, each in consideration for the other." *Id.* at 645. Because, strictly speaking, a will does not effect an "exchange" of property, it does not constitute a "commercial" instrument. Likewise, a "release" (*i.e.,* "[t]he relinquishment or concession of a right, title, or claim[,]" *id.* at 1403) does not necessarily involve an "exchange." And yet, if anything is plain about Section 32.21(d), it is that both a will (and codicil) and a release are regarded as "commercial instruments" for purposes of determining the level of offense for the offense of forgery.

**33.** *Boykin v. State, supra,* at 785–86.

**34.** *See* TEX. GOV'T CODE § 311.023 ("In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the ... legislative history[.]").

**35.** V.T.C.A. Penal Code § 32.21 (1989), Practice Commentary at 172. The Practice Commentaries derive from the Comments of the

State Bar Committee on Revision of the Penal Code that accompanied the 1970 Proposed Penal Code, which comments are "an important source of legislative history." V.T.C.A. Penal Code, Foreward (1974), at XXIV. This is especially so in this case because the forgery statute as enacted in 1973 is materially identical to the version originally proposed in 1970. The list of "commercial instruments" in Section 31.21(d) is the same now as when it was enacted in 1973, except that the phrase, "authorization to debit an account at a financial institution," has been added. *See* Acts 2003, 78th Leg., ch. 1104, § 1, p. 3170, effective Sept. 1, 2003. The "middle range of penalties" has been changed from third degree felony to state jail felony. *See* Acts 1993, 73rd Leg., ch. 900, § 1.1, p. 3644, eff. Sept. 1, 1994.

**36.** BLACK'S, *supra,* at 555. In *Ramos v. State, supra,* at 307, we relied upon a similar definition of "document" taken from the OXFORD ENGLISH DICTIONARY—COMPACT EDITION, Vol. I, at 781 (1971): "something written, inscribed, etc., which furnishes evidence or information upon any subject." A store receipt "furnishes evidence" of a retail commercial transaction.

merce," then, would seem to embrace a "receipt[ ] . . . used to prove a fact" relating to "the exchange of goods and services[.]"[37] Clearly, a store receipt falls within this definition. Indeed, though a store receipt may amount to no more than the memorialization of a commercial transaction, it seems more like what we might ordinarily regard as a "commercial" instrument than, for example, a will (or codicil) or a release.

We conclude that the particular "commercial instruments" delineated by Section 32.21(d) are not so distinctly and narrowly drawn as to define a class to which a store receipt plainly does not belong. To invoke the rule of *ejusdem generis* to exclude such a patent example of a "commercial instrument" would serve to defeat rather than effectuate the intent of the Legislature to impose a higher range of penalty for any forgery that involves, as the Practice Commentary characterized it, "documents of commerce." We hold that a store receipt does constitute an "other commercial instrument" for purposes of Section 32.21(d). The court of appeals erred to conclude otherwise.

The court of appeals seemed to concede that, because "a receipt might be used . . . in more ways than those contained in the classic definition of the term," it might constitute an "other commercial instrument" in a given case, but held that "there was no evidence of that adduced in such a regard here."[38] We observe that the record in this case *does* show that a Wal–Mart store receipt's memorialization of a purchase is what allows a purchaser (at least of higher priced items such as a computer), after the purchase that it documents is completed, to exit the store with the merchandise. Moreover, it is common knowledge that a store receipt is often necessary to return merchandise for other goods, for cash, or for store credit. These uses are sufficient to qualify a store receipt as a "document of commerce" within what we find to be the broader legislative intent. In any event, because we conclude that a store receipt constitutes an "other commercial instrument" under Section 32.21(d), even by "the classic definition of the term," we need not address the question of the adequacy of the State's proof to show that the store receipt might otherwise have amounted to "another commercial instrument." Given our construction of the statute, we hold that the evidence was sufficient to support conviction of the appellant as an enhanced state jail felon.

## CONCLUSION

The judgment of the court of appeals is, accordingly, reversed and the judgment of the trial court is reinstated.

MEYERS, J., filed a concurring opinion.

KELLER, PJ., filed a dissenting opinion in which JOHNSON, J., joined.

WOMACK, J., dissented.

MEYERS, J., concurring.

I agree with the plurality that the evidence is legally sufficient to support the jury's verdict that the receipt was a "commercial instrument" under Section 32.21(d) of the Texas Penal Code. However, I disagree with the path taken to reach that result. A plain meaning for "commercial instrument" exists, so the plurality should not have looked beyond the statutory language to consider legislative history.

Section 32.21(d) provides a list of many types of instruments, all of which are writings that provide for a right, privilege,

---

**37.** *Id.,* and at 304.

**38.** *Shipp v. State, supra,* at 275.

value, or identification in property. At the end of this list is the phrase "or other commercial instrument." TEX. PENAL CODE ANN. § 32.21(d). The placement of the phrase and use of the word "other" indicates that the list is not exclusive and the list extends to other unnamed items in the class of writings termed "commercial instruments." The Penal Code does not define the phrase "commercial instrument," so its meaning must be determined based on principles of statutory construction.

When a statutory term is not defined, we attempt to give effect to its plain meaning or common understanding. *Ramos*, 303 S.W.3d at 307; *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). The term is generally construed in context as the rules of grammar and common usage allow and utilizing the rules of statutory construction, unless it has acquired a technical or specialized meaning. TEX. GOV'T CODE ANN. § 311.011; *Boykin*, 818 S.W.2d at 785 n. 3. One canon of statutory construction that aids us in determining plain meaning is the doctrine of *ejusdem generis*, which the court of appeals employed: "in interpreting general words which follow an enumeration of particular or specific things, the meaning of those general words should be confined to things of the same kind." *Perez v. State*, 11 S.W.3d 218, 221 (Tex.Crim.App.2000) (en banc); *see Shipp v. State*, 292 S.W.3d 267, 274–75 (Tex.App.-Texarkana 2009). Only when the term is ambiguous or the plain meaning leads to an absurd result do we look to extratextual factors, including legislative history, to ascertain the meaning. *Boykin*, 818 S.W.2d at 785–86.

When construing "commercial instrument," the court of appeals did not have the benefit of our decision in *Ramos v. State*, in which this Court defined the common usage of the term "instrument" as it is used in a different section of the same felony forgery statute. *Ramos*, 303 S.W.3d at 307–08. That case is useful to my present analysis.

The appellant in *Ramos* was convicted under Section 32.21(e)(3)[1] of felony forgery of a government instrument after selling a forged Social Security card to an undercover officer. In determining whether the Social Security card was indeed an "instrument," we first rejected the argument that the technical meaning of "instrument" was "negotiable instrument" as found in the Texas Business and Commerce Code. That code is "by and large, unrelated" to the Penal Code, and since the other items listed in Section 32.21(e) are not limited to negotiable documents, we determined "that the Legislature intended to punish as a third-degree felony the forgery of any 'instrument' issued by government, regardless of whether that 'instrument' was negotiable." *Id.* at 307. We then concluded that "instrument" was a term in common usage and, relying on the Oxford English Dictionary, defined it as "a formal legal document whereby a right is created or confirmed, or a fact recorded; a formal writing of any kind, as an agreement, deed, charter, or record drawn up and executed in technical form, so as to be of legal validity." *Id.* This was broad enough to include a Social Security card.

The term central to this case is "commercial instrument," rather than "instrument," but I do not believe the adjective "commercial" transforms the meaning of

---

1. "An offense under this section is a felony of the third degree if the writing is or purports to be ... (3) other instruments issued by a state or national government or by a subdivision of either, or part of an issue of stock, bonds, or other instruments representing interests in or claims against another person." TEX PENAL CODE ANN. § 32.21(e).

"instrument."[2] Although "instrument" as construed in *Ramos* is located in a different subsection than "commercial instrument," it is logical to assume that the Legislature would have intended the term to have the same meaning within the same subchapter of the Penal Code.[3] If the Legislature intended "instrument" to convey one meaning in Section 32.21(d) and another in Section 32.21(e), it would have used two different words to distinguish meanings.

Instead of transforming the meaning of "instrument," "commercial" narrows it to those instruments used in commerce, and the modifier's significance is also determined according to a plain meaning analysis. The Oxford English Dictionary defines "commerce" as "to carry on trade." 1 OXFORD ENGLISH DICTIONARY 678 (compact ed.1971). Similarly, Black's Law Dictionary identifies "commerce" as "[t]he exchange of goods and services," and several terms modified by the adjective "commercial" are defined as relating to the sale or exchange of goods. BLACK'S LAW DICTIONARY 214–15 (abr. 7th ed.2000). Accordingly, "commercial" limits the instruments referred to in Section 32.21(d) to those involved in the buying, selling, or transfer of goods, services, or other benefit.

This definition is supported by Section 32.21(d) itself. The general catch-all at the end of the precise list reads "or other commercial instrument." The "other" is of particular significance because it presumes that the specific items listed previously are types of "commercial instruments," and thus, they should all fall within the phrase's definition. Indeed, each item can be classified within my definition.

The dissent would define "other commercial instrument" as documents that *create or discharge an economic obligation or that transfer property*, but that definition is too narrow. The specific items listed in Section 32.21(d) can reach beyond the scope of the dissent's characterization. For example, wills and codicils need not be limited to economic obligations or property transfers. They often cover other issues such as the custody of a child, the guardianship of elders, and medical directives.

The receipt here fits within the definition of instrument provided for in *Ramos* ("a formal legal document whereby a right is created or confirmed") as modified by "commercial." More than a mere "memorialization of a past transaction" without any future benefit as the court of appeals suggests, the receipt evidences a contract for the sale of goods, a legal relationship between the buyer and seller.[4] It is a record of a commercial transaction that confirms the right to possess the items purchased (including the ability to trans-

---

**2.** Like the court of appeals, I do not apply the Texas Business and Commerce Code's definition of "instrument," "a negotiable instrument," to Section 32.21(d). *See Shipp v. State*, 292 S.W.3d 267, 271 n. 2 (Tex.App.-Texarkana 2009). This is also consistent with our discussion in *Ramos*. *Ramos*, 303 S.W.3d at 307.

**3.** Applying the *Ramos* definition to Section 32.21(d) is consistent with the approach of the Model Penal Code, which contains a similar felony forgery statute: "Forgery is a felony of the third degree if the writing is or purports to be a will, deed, contract, release, commercial instrument, or *other document evidencing, creating, transferring, altering, terminating, or otherwise affecting legal relations*." MODEL PENAL CODE § 224.1(2) (Proposed Official Draft 1962) (emphasis added).

**4.** *See Commonwealth v. Sneddon*, 738 A.2d 1026, 1028 (Pa.Super.Ct.1999) (stating that "a cash register receipt is a 'document evidencing ... or otherwise affecting legal relations'.... To alter a cash receipt is to alter the legal relationship between a buyer and seller.").

port them).[5] Consequently, I disagree with the court of appeals. Under the facts of this case and given the determination by the jury, it is reasonable to characterize the receipt as a "commercial instrument" under Section 32.21(d).

My conclusion is supported by *Runnels v. State*, No. 14–03–00657–CR, 2005 WL 6345167, 2005 Tex.App. LEXIS 1381 (Tex. App.-Houston [14th Dist.] Feb. 15, 2005, pet. ref'd) (mem. op., not designated for publication) and *Graham v. State*, No. 14–97–00840–CR, 1999 WL 298274, 1999 Tex. App. LEXIS 3564 (Tex.App.-Houston [14th Dist.] April 13, 1999, pet. ref'd) (not designated for publication), which I consider to be more pertinent to this analysis than did the court of appeals. The court of appeals distinguished the football tickets in *Runnels* from the receipt because the football tickets, unlike the receipt, had value in that "they permitted the bearer to gain admittance to the stadium and be entitled to sit in a designated seat." *Shipp*, 292 S.W.3d at 273. Actually, the receipt serves a similar function to the football tickets because, if authentic, it would have given Appellant the right to possess the items and, thus, entitled him to leave the store with the merchandise. Similarly, I do not see the credit slip in *Graham* as completely distinguishable from the receipt. Although the receipt may not be "as good as money" because it cannot be exchanged for reimbursement without the merchandise also being returned, both the credit slip and the receipt,

if authentic, evidence a commercial relationship between the buyer and seller that continues to have significance and is honored upon the document's presentation.

Accordingly, because the term "commercial instrument" is not ambiguous and its plain meaning does not lead to absurd results, it is unnecessary to consult the statute's legislative history or other extratextual sources. The plurality was incorrect for doing so.[6]

I also believe that the plurality opinion is deficient for not addressing the portion of the court of appeals's opinion referring to the jury charge. Even if, as the plurality suggests, the court of appeals "gratuitously opined" about the definition of "commercial instrument" provided by the trial court in the charge, the plurality opinion should have addressed that portion of the lower court's opinion. I hope that my discussion of such is instructive to appellate courts in the future.

In assessing jury charge errors, we first must determine whether error exists. If error is present, we then evaluate whether the error caused harm. *Hutch v. State*, 922 S.W.2d 166, 170–71 (Tex.Crim.App. 1996) (citing *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985) (op. on reh'g)). The standard of review for errors in the jury charge depends upon whether the error was preserved. Error preserved by objection will require reversal if there is any harm, but if not preserved, egregious

---

5.  The court of appeals stated that "there was no testimony provided here to demonstrate that a receipt issued by this Wal–Mart store is anything more than the memorialization of a past transaction, as opposed to the other kinds of things granting or ceding future benefits or rights listed in Section 32.21(d)." *Shipp*, 292 S.W.3d at 275. I disagree because the record supports that the receipt grants the future benefit of allowing the customer to leave the Wal–Mart store with the merchandise. Also, as the plurality acknowledges,

while the possibility of returning merchandise for cash or credit was not raised at trial, it is common for stores to have return policies that allow merchandise to be exchanged or refunded with a receipt.

6.  Since the lead opinion is a plurality, I am not sure that a majority of this court agrees that it was necessary to look to legislative history in this case.

harm is required. *Id.* at 171. I disagree with the court of appeals's holding that the jury charge was erroneous.

A proper jury charge guides the jury in answering the questions presented. *Id.* at 170. This requires the charge to define any legal term or phrase that the jury needs to properly resolve the issues. No special instructions are necessarily required for terms or phrases that have neither been statutorily defined nor acquired a technical meaning. *Medford v. State*, 13 S.W.3d 769, 772 (Tex.Crim.App.2000). But simply because a trial court is not required to give an instruction regarding a term, that does not mean the court errs by doing so. *Lockhart v. State*, 108 Tex.Crim. 597, 1 S.W.2d 894, 895 (1927) ("In our opinion it is not necessary to give any definition of the terms used in the statute, but, one having been attempted, we think it not erroneous.").[7] The trial court has broad discretion in submitting proper definitions and explanatory phrases to aid the jury. *Macias v. State*, 959 S.W.2d 332, 336 (Tex. App.-Houston [14th Dist.] 1997, pet. ref'd). Nonetheless, because the jury is the ultimate trier of fact, the charge may not advise the jury on the specific application of the facts to the law such that it comments on the weight of the evidence. *Watts v. State*, 99 S.W.3d 604, 609–13 (Tex.Crim. App.2003).

Because "commercial instrument" has neither a statutory definition nor a technical meaning, the trial court had broad discretion when defining the term in the jury charge. The jury charge in this case defined "commercial instrument" as "anything reduced to writing which is executed or delivered as evidence of an act or agreement, and said writing relates to or is connected with trade, and traffic, or commerce in general, or is occupied with business and commerce." *Shipp*, 292 S.W.3d at 270. While the definition is broad, it comports with the plain meaning discussed previously. In addition, the charge is neutral; that is, it does not indicate how the facts should be applied to the phrase defined, and thus, it does not comprise a comment on the weight of the evidence.

Therefore, even though the trial court was not obligated to give a definition of "commercial instrument," it did not abuse its discretion in presenting this definition in its charge to the jury. Nor was the definition inaccurate, misleading, or a comment on the weight of the evidence. I also find that the jury's determination of guilt under Section 32.21(d) is reasonable, given the facts of this case and the definition of "commercial instrument" provided in the court's charge. I neither claim this to be the proper definition of "commercial instrument" nor encourage courts to use this definition in the future, but in this particular case, it did not result in trial error.

For these reasons, I respectfully concur.

KELLER, P.J., filed a dissenting opinion in which JOHNSON, J., joined.

The evidence in this case shows that appellant committed a forgery when he passed a fabricated store receipt. Whether that forgery was a misdemeanor or a state jail felony depends upon whether it was forgery of a "commercial instrument." I agree with the court of appeals that a store receipt is not a "commercial instru-

---

7. This is distinguishable from the situation in which the trial court does not define a term in the jury charge: "It is not error, in a prosecution for violating a statute, to refuse to define a word used in the statute, when such word is used in its ordinary sense, and it is easily comprehended by everyone." *Russell v. State*, 665 S.W.2d 771, 780 (Tex.Crim.App. 1983); *see Sanders v. State*, 605 S.W.2d 612, 615 (Tex.Crim.App.1980); *Hogan v. State*, 496 S.W.2d 594, 599 (Tex.Crim.App.1973).

ment."[1] Consequently, I would address whether we should overrule *Collier v. State*[2] and reform the judgment to a conviction for misdemeanor forgery.

Whether a store receipt is a commercial instrument is a question of statutory construction. In construing a statute, we give effect to the meaning of the literal text, so long as the text is "clear and unambiguous."[3] If the statutory language is ambiguous, or leads to absurd results that the Legislature could not possibly have intended, then we may consult extra-textual sources of information.[4] When conducting an inquiry into the plain meaning of the literal text, we are guided by established canons of construction.[5]

One of the canons of construction—employed by the court of appeals in this case-is the doctrine of *ejusdem generis,* which provides: "when interpreting general words that follow an enumeration of particular or specific things, the meaning of those general words should be confined to things of the same kind."[6] The doctrine "gives effect to both the particular and the general words, by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words."[7] We have applied that doctrine when particular terms are followed by a catch-all phrase introduced by the word "other."[8]

Subsection (d) of the forgery statute provides that forgery is a state jail felony if the forged writing is, or purports to be, one of the following types of documents: "a will, codicil, deed, deed of trust, mortgage, security instrument, security agreement, credit card, check, authorization to debit an account at a financial institution, or similar sight order for payment of money, contract, release, or *other commercial instrument.*"[9] Because subsection (d) enumerates particular terms that are followed by the catch-all phrase "or other commercial instrument," an *ejusdem generis* analysis is appropriate. Applying an *ejusdem generis* analysis leads to the conclusion that the particular terms are all examples of documents that create or discharge an economic obligation or that transfer property. Thus, the phrase "or other commercial instrument" must also refer to a document that creates or discharges an economic obligation or that transfers property.

A store receipt does not create or discharge an economic obligation, nor does it transfer property. Rather, the receipt "memorializes a transaction that has previously occurred, a fait accompli."[10] It is simply evidence that a transaction has already occurred. Although the receipt is evidence that an item has been purchased, it is the purchase, not the receipt, that gives the purchaser a right to the item.

---

1. *Shipp v. State,* 292 S.W.3d 267 (Tex.App.Texarkana 2009).

2. 999 S.W.2d 779 (Tex.Crim.App.1999).

3. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

4. *Id.*

5. *Id.*

6. *Thomas v. State,* 65 S.W.3d 38, 41 (Tex. Crim.App.2001).

7. *Id.* at 42 (quoting *Lefevers v. State,* 20 S.W.3d 707, 711–12 (Tex.Crim.App.2000)) (internal quotes omitted).

8. *Id.* (construing the phrase "or other evidence of indebtedness").

9. TEX. PENAL CODE § 32.21(d) (emphasis added).

10. *Shipp,* 292 S.W.3d at 275.

Likewise, even if a receipt is required by a particular store in order to obtain a refund under the store's return policy, it is the return policy, not the receipt, that creates an obligation in the store to issue a refund. And even then, the item itself must be returned; presentation of the receipt alone would not entitle a purchaser to a refund.

Before the adoption of the modern penal code, to be guilty of forgery, a person was required to "without lawful authority, and with intent to injure or defraud, [ ] make a false instrument in writing purporting to be the act of another, in such manner that the false instrument so made would (if the same were true) have created, increased, diminished, discharged or *defeated* any pecuniary obligation, or would have transferred, or in any manner have affected any property whatever." [11] In a 1941 forgery case based upon this statute, this Court informally referred to a receipt as a "commercial instrument." [12] The authorities relied upon in that case can be traced to *Fonville v. State,* an 1884 decision by our predecessor, the Court of Appeals. [13] *Fonville* held that a receipt could be the basis of a forgery prosecution because a receipt,

if true, could defeat a lawsuit based upon a failure to pay all that was owed. [14] For example, if a defendant stole a bicycle from a store and forged a receipt for it, the receipt, if it had been real, would have defeated a lawsuit by the store for the value of the bicycle, since the receipt would have shown that the defendant had paid for it.

With the advent of Texas's modern penal code, which was influenced by the Model Penal Code, the forgery statute has been dramatically reworded, and its scope has been expanded beyond documents that relate to pecuniary obligations or the transfer of property. [15] Under both the Model Code and the current Texas provision, forgery is punished as a misdemeanor unless the document forged falls within one of several specified categories. [16] In the Texas statute, subsection (d) prescribes a state-jail-felony punishment for documents purporting to involve economic obligations or the transfer of property, but, in one respect, the wording of the provision is narrower in scope than the previous forgery statute: Nothing in the current provision suggests that it is direct-

11. TEX. PENAL CODE art. 979 (1948) (emphasis added, empty brackets inserted in place of "shall" in the text); *see also* TEX. PENAL CODE art. 924 (1911) (identical text, except for the presence of a comma after "writing").

12. *Blake v. State,* 142 Tex.Crim. 518, 519, 155 S.W.2d 365, 365 (1941)

13. *See Blake,* 142 Tex.Crim. at 519, 155 S.W.2d at 365 (citing three cases, including *Martin v. State,* 85 Tex.Crim. 89, 209 S.W. 668 (1919)); *See Martin,* 85 Tex.Crim. at 90–91, 209 S.W. at 668–69 (discussing *Fonville v. State,* 17 Tex.Ct.App. 368 (1884)).

14. *Fonville,* 17 Tex.Ct.App. at 382 (Acting as an agent for Hamby, the defendant paid $1.35 to pick up a parcel, but then he charged Hamby $1.75 for the parcel, overcharging him by forty cents. "And for this amount, though small indeed, Hamby had a right of action against [the defendant]. Now suppose

suit instituted," if the defendant had indeed paid $1.75, "as is stated in the receipt," then "certainly the pecuniary obligation of him to Hamby would have been defeated."); *see also Martin,* 85 Tex.Crim. at 90–91, 209 S.W. at 668–69 (quoting from *Fonville* ).

15. *Compare* TEX. PENAL CODE § 32.21 *with* MODEL PENAL CODE § 224.1. *See also* Seth S. Searcy III and James R. Patterson, *Practice Commentary,* TEX. PENAL CODE § 32.21, p. 171–72 (Vernon's 1989) (observing that the current forgery statute "consolidates a number of provisions of the old Penal Code covering forgery of different kinds of documents" and "extends the offense to nonmonetary and nonproperty injuries").

16. TEX. PENAL CODE § 32.21(c); MODEL PENAL CODE § 224.1(2).

ed at documents that merely "defeat" an obligation, as opposed to creating or discharging one. Nor is there any suggestion in the current provision that it covers documents that merely "affect" property, as opposed to documents that actually transfer property. Indeed, subsection (d)'s language is narrower than its Model Penal Code counterpart, which encompasses a document "evidencing ... or otherwise affecting legal relations." [17] If the Legislature had intended to punish as a state jail felony the forging of a document that defeats, evidences, or otherwise affects an economic obligation, property, or legal relations, it could have easily included language to that effect.[18]

So, I would hold that a receipt is not a commercial instrument under subsection (d). A receipt certainly evidences—and may well defeat or otherwise affect—an economic obligation, but a receipt neither creates nor discharges such an obligation nor does a receipt transfer property. Because the evidence was insufficient to support appellant's conviction, I would proceed to address whether the judgment should be reformed to reflect a conviction for the lesser offense of misdemeanor forgery.

I respectfully dissent.

---

17. MODEL PENAL CODE § 224.1(2).

18. The Court criticizes the court of appeals for identifying the class of documents in subsection (d) as those that "relate to legal rights or relationships" on the ground that such a class is "so broad as to be largely meaningless." Court's op. at 438. The court of appeals's statement of the class is not as broad as the Court suggests. Although the court of appeals initially observed that the documents outlined in the statute all "relate to legal rights or relationships," it explained that the class of documents at issue are those that "either grant or cede a present or future benefit or right." *Shipp*, 292 S.W.3d at 275. My dissent formulates an even narrower class for subsection (d), but my dissent and the court of appeals's opinion both recognize that subsection (d)'s class does not include documents that merely *memorialize* or *evidence* a right, obligation, or transaction.

The Court asks, "How is a will or codicil like a check? How is a deed of trust or a mortgage like a credit or debit card?" Court's op. at 439. These documents are all alike in that the documents themselves have binding legal effect. Wills, codicils, and deeds of trust are documents that legally effectuate the transfer of property. A mortgage legally obligates a lender to advance the borrower money and obligates the borrower to repay it. A credit card legally obligates the credit-card issuer to afford credit to the credit-card user to make purchases. A debit card legally obligates the debit-card issuer to make available, for purchases, funds from an account linked to the card. By contrast, though a receipt memorializes or evidences a transaction that has binding legal effect, the receipt itself has no binding legal effect.